ST. PAUL, J.
This is an action brought on December 28, 1918, by .the children and grandchildren of James Walsh,. against the widow and children of Alcide Judice, praying that they (plaintiffs) be recognized as owners and be given possession of certain lands (142 acres) in Lafayette parish, and that a certain deed of sale thereof made by Walsh to Judice on November 3, 1893, for the alleged consideration of $1,200 cash, -be set aside as a mere simulation; and they pray for rents from 1906. Their cause of action is thus set forth:
“Petitioners aver that the said pretended sale by said Walsh to said Judice was a mere simulation, and that no consideration was paid by the said Judice as the price of said sale, and that the document evidencing the said alleged contract was executed by said Walsh merely for the purpose of putting the apparent title to the property in the name of said Alcide Judice for the purpose of disinheriting his children by his first marriage and of placing the said property beyond the reach of seizure, by certain of his creditors; and that it was agreed between Walsh and Judice that at the death of the former the latter would- convey the title of said property gratuitously to Mrs. Yesta Laughlin and her children,- the second wife of said Walsh and the issue of .their marriage; that said Judice, after the death of said Walsh *1092 (October 3, 1908), for the first time fraudulently pretended to own the property conveyed to him by said Walsh under the circumstances and for the purposes above set forth. * * *
“Petitioners aver that James Walsh remained in full possession as owner of the above-described property up to the time of his death (October 3, 1906), and that since that time Alcide Judiee and his heirs fraudulently, illegally, and in bad faith, assuming to be owners thereof, have taken possession of the same, and petitioners are therefore entitled,” etc.
The defense is that the transaction between Walsh and Judiee was real and bona fide; that the true consideration flowing from said Judiee to said Walsh was, cash, §118.76, and- the discharge of the following debt due by Walsh to Judiee, to wit: One note, §845.74; interest thereon, §56; and an open account, §179.50; making in all ’§1,200.
I.
Plaintiffs’ -cause of action hangs principally on two articles of the Civil Code, as follows:
“Article 2239 [aé amended by Act 5 of 1884]: Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [légitime].” ,
“Article 2480: In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons the parties must produce proof that they are acting in good faith, and establish the realty of the sale.”
II.
It will be observed from the foregoing extracts from the petition that we have here not only a charge on the part of the heirs of James Walsh that their ancestor simulated a sale for the benefit of some of ihem and to the prejudice of others, but the far more serious charge, so far as the defendants are concerned, that Alcide Judiee, whom their ancestor trusted for that purpose, has violated the Confidence and breached the trust so reposed in him.
For, even if unlawful, it is yet but a venial offense for an aged father to endeavor to secure to his infant offspring after Ms death some of the advantages which whilst living he so willingly conferred on his older progeny. But the name of traitor is anathema at all times and in all places; and what shall we call him who violated the trust reposed by the husband and father in order to rob the widow and orphans. And that is what these plaintiffs charge against Alcide Judiee. Such a charge requires strong proof. •
III.
To support the charge that Walsh and Judice entered into the agreement alleged in the petition, only slight evidence is produced. Not a witness testified that Walsh ever so stated to any one, except the widow. To his brother-in-law (Davis) “He said it was a redeemable sale * * * He said, T sold it to Mr. Judice redeemable, so at my death my children would get that property [his last children].’ ”
Now the word “redeemable” is neither so technical nor of such occult meaning as not to be perfectly understood by the ordinary layman. And Walsh, who lonew that he was paying no taxes on the land, doubtless knew also what a redeemable sale meant. Nor can we doubt that he used that word to Dhvis, for the latter had already heard the leading question put to him whether Walsh had' said that it was a “pretended” sale, when he answered that Walsh said it was a “redeemable” sale. The addition afterwards made by the witness that he (Walsh) sold it to Judiee redeemable “so at my death my children will get that property” was evidently suggested by the particular inquiry, “What do you mean' by redeemable sale?” objected to, and then, “What did Walsh say?”
*1094 And Walsh meant just what he said; that is, just what the sale was in fact. For in 1901, sei&n years after the sale, and long before the death of Walsh, Judice was trying to persuade Stakeliun, a son-in-law, to redeem for the cost price, plus interest and taxes, and Walsh knew of it. After Walsh’s death Judice again offered to'redeem on the same terms. During Walsh’s lifetime. Judice had tried to persuade Walsh to redeem, but the latter would not do so. And there were very good reasons. It is shown that Walsh wished to make his will in favor of his wife and younger children, but was told he could not ignore his older ones. Hence it was obvious that to redeem his separate property, in which his younger children would get only a virile share and his wife “only a child’s share,” and that in usufruct only, was opposed to the purpose he had in view, which could better be accomplished, by living rent free on said property and accumulating in the hands of Judice a comrrmnity fund in which his wife would have her own one half, and his young children still have their share. And Walsh had consulted “Judge Evans” before he made the sale to Judice.
IV.
The fact that Walsh told Stakelum and his wife, after Stakeíum had seen with his own eyes the deed of sale to Judice, “Never mind; that ain’t so,” has no other significance than that Walsh preferred to keep his business to himself; and the fact that after Walsh’s death the widow purchased part of the property from Judice with community funds in the hands of Judice is more convincing as to what the true facts' were so far as she knew thafi her testimony, given more than 10 years afterwards, that it was a “pretended” sale.
V.
As to the fact that Walsh continued to live on the property rent free, that is only a “reason to presume” that the sale was simulated. But it is not conclusive, and is open to rebuttal by proof that the sale was bona fide.
Now the fact that Walsh was allowed to remain on the property without paying rent is of no consequence whatever if the proof otherwise shows that Judice paid Walsh for the property. If it was his, Judice had the right to do as he pleased; but the fact is that Judice was at all times willing to return the property for the cost price plus interest and taxes, and if he could get this out of the property he had nothing to lose by charging no rent. And the fact is also that the property was at any time good for that amount, so that Judice could both oblige his friend and at the same time lose nothing by letting things go along as they were. All he stood to lose was the profit he might have made on the land, and it is shown conclusively that he did not want to make that profit" on Walsh’s head. The trouble is (as we see it) that the plaintiffs want to get back the property without paying back the price. ¡,
For a study of this record convinces us, that the sale by Walsh to Judice was bona fide and for a full consideration.
Mr. L. Leo Judice was a partner of his father, Alcide Judice, and was personally acquainted with the whole transaction from beginning to end; he had stood with Walsh as groomsman at his second marriage, and had been honored by the people of Lafayette parish with a seat in the constitutional convention of 1921; he testified with the books of the firm before him, called for by plaintiffs, and corroborating all he said, and before a judge v and jury of the vicinage, that the consideration paid to Walsh at the time of the sale was the consideration which, as we have stated, was set up in the answer.
The judge and jury believed him. The act of sale is entitled to some weight; the inaction of Walsh for 13 years, the action of the widow immediately after Walsh’s death, *1096 the inaction of his heirs during the lifetime of Judice, the father, and for 12 years after the death of Walsh — all these are circumstances that must be taken into consideration, and speak loudly against this attempt of plaintiffs to set aside a sale made full 25 years before they brought their suit, and some 30* years before this writing. We think the judgment below was correct.
Decree.
The judgment appealed from is therefore affirmed.
DAWKINS, OVERTON, and LAND, JJ., dissent.