O’NIELL, C. J.
 

 Margaret Whitner, a colored woman over 80 years of age, died at her home in the city of Baton Rouge on the 3d of February, 1925, leaving as her heirs at law a daughter, Josephine 'Whitner- Giles, wife of Washington Giles, and three sons, namely, Richard Kelly, Nelson Whitner and Joseph Whitner, and a grandson, George Young, the only child of Janie Whitner Young, déeeased daughter of Margaret Whitner.
 

 During the last twenty years of Margaret Whitner’s lifetime, her daughter Josephine lived with her, and her son Richard Kelly lived in an old house or shack in a corner of the yard. For many years Margaret Whitner received from the government a pension of $36 a quarter, which was increased to $72 a quarter, about five years before she died, and is said to have been increased to $30 a month a short time before she died. She managed by humble living and economy to support herself and to rear two grandchildren who were left dependent upon her by a -younger daughter who died many years ago. The daughter, Josephine, before and after her marriage, worked as a laundress and had boarders and lodgers, for whom she did the cooking. One of the boarders slept in the shack where Richard Kelly lived, and five of them slept in the house occupied by the mother and daughter. The latter’s husband, Washington Giles, worked in a machine shop in New Orleans, earning wages that went as high as $145 a month during the late war, and down to $96 afterwards. Richard Kelly and his sister, Josephine, built a new residence for their mother on the lot on which the three lived. The building was commenced in 1920 and completed in 1923. There is no proof ás to what the building cost, the only description in the record being that it contains six bedrooms, a bathroom, etc. Nearly all of the carpenter work was done by Richard Kelly. Washington Giles did a small part of the work. The lumber and other materials were paid for as the work progressed, or, perhaps we should say — very much to the credit of all of them — the work progressed, as Margaret Whitner and Josephine were able to pay for the lumber and other materials; for their only resources were the mother’s pension, the daughter’s meager wages, the earnings from the boarding house, and the contributions made.by Giles.
 

 On the 18th of July, 1921, Margaret Whitner acknowledged in a notarial act that she owed her daughter, Josephine, $2,000, for money advanced at various times and used in the improvement of the property described in the act, and for which she gave a promissory note, payable four years from that date, and secured by a mortgage on the property. On the 8th of August, 1922, Margaret Whitner appeared before another notary public and sold the property to her daughter, Josephine, at the price of $2,920, as stated in the deed, acknowledging receipt of $920 in cash, and
 
 *515
 
 for the balance of the price the daughter canceled the mortgage note for $2,000 held by her. In the act of sale, the mother reserved the usufruct, or life estate, on the property; and thereafter she and her daughter continued residing in the new house and Richard Kelly remained in the old house in the corner of the lot.
 

 In January, 1925, Josephine Whitner Giles brought this suit to evict Richard Kelly, averring that she had allowed him to occupy the premises without paying rent “solely through kindness for her brother, as she was not in need of said premises at that time,” but'that she had since found need for the house and desired that he should vacate it.
 

 Margaret Whitner died before Kelly answered the suit. In his answer he set up a reconventional demand against the plaintiff to have the act of mortgage and the sale to her annulled, averring that they were simulated transactions, being made for no consideration, or at most that they were made for an inadequate consideration and that the sale was therefore a donation in disguise. He averred that he and the plaintiff and their brothers, Nelson and Joseph Whitner, and their nephew, George Young, were the only heirs and forced heirs of Margaret Whitner and were entitled to be sent into possession of her estate unconditionally and as owners in the proportion of a fifth to each of them. Nelson and Joseph Whitner and George Young intervened in the suit, joining in. the defense and setting up the same demand which the defendant had asserted as plaintiff in reconvention.
 

 There was judgment for the defendant, Kelly, and for the interveners, annulling the act of mortgage and the sale to the plaintiff, declaring the plaintiff and defendant and the interveners to be each the owner of a fifth of the estate, ordering the plaintiff to collate ,and return the property to the succession, ,apd reserving her right to establish in a separate action whatever indebtedness might be due to her for the improvements placed upon the property. The court also ordered an inventory made by a notary public named in the judgment, for the purpose of effecting a partition of the estate. The plaintiff has appealed from the decision.
 

 The judgment appealed from is founded upon article 2444 of the Civil Code, viz.:
 

 “The sales of immovable property made by parents to their children may be attacked by the forced heirs, as containing a donation in disguise, if the latter can proye that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold at the time of the sale.”
 

 The fact that the seller reserved the usufruct and remained in possession of the property after the sale put the burden of proof on the buyer to show that an adequate consideration was paid.
 

 “In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.” Rev. Civ. Code, art 2480; Peyton v. Roth, 149 La. 147. 88 So. 773.
 

 We concur in the opinion of the district judge that the plaintiff failed to prove that she had paid her mother as much as a fourth of the value of the property. The lot was worth about $4,000 without considering the value of the improvements. The improvements did not add as much to the value of the lot as perhaps the improvements would have cost, because the neighborhood had improved so as a residence neighborhood that a purchaser who would pay the highest market value for the lot would want a better residence than was on it. The plaintiff was a very unsatisfactory witness for herself. She had kept no record or account whatever of the sums that she had contributed to the building of the house, or for caring for her mother, either from her own wages or in the
 
 *517
 
 gifts made to her by her husband. There was no money paid by the plaintiff to her mother at the time the mortgage was given or when the sale was made. No receipts or vouchers were produced for any bills that were paid. The only evidence in that respect is the testimony of the plaintiff that she paid sums of money to her mother or paid for lumber that went into the new house, from time to time, and the testimony of the plaintiff’s husband that he paid or remitted sums of money to her every two weeks, to assist in the building of the house. The house was not completed or nearly completed when the mortgage was given. We believe, from the evidence, that the plaintiff’s mother was indebted to her to some extent when the sale was made, but not to the extent of a fourth of the value of the property. The judgment in that respect appears to be correct.
 

 In the trial of the ease, the plaintiff offered testimony which chst some doubt upon the legitimacy of the birth of the defendant Richard Kelly. She did not, in her petition or in her answer to the reeonventional demand, or in her answer to the petition of intervention, allege that Richard Kelly was not a legitimate child of their mother. On the contrary, she alleged in her petition that the consideration or motive for which she had allowed him to occupy the house was her affection or kindness for her brother. And, in her answer to his reeonventional demand, she merely denied his allegations that he and she and their two brothers and nephew were the heirs at law of their mother, except that she admitted that she was the heir of their mother. The interveners admit that Kelly is the legitimate son of their mother, born of a marriage previous to her marriage to their father. He was reared by his mother as one of her children and was so recognized always by his brothers and sisters. As far as this record .shows his legitimacy was never doubted before the trial of this case. His mother was a -slave. The evidence leaves some doubt as to whether he was born before or after the proclamation of emancipation. He testified that his mother told him that she was married to his father in the town of Clinton, in East Feliciana parish, where she resided after the Civil War. He did not produce any record of the marriage, and perhaps there is none; but that is not conclusive proof against the legitimacy of a birth as humble as his was. Some allowance must be made for the fact that time has obscured the events of slave marriages, or marriage ceremonies between members of the colored race soon after they were emancipated — events which were not generally important then. We concur in the opinion of the district judge that, after so many years of recognition of Richard Kelly by his brothers and sisters, as their brother, the presumption, as far as they are concerned, is that he is their legitimate brother. The presumption is not overcome by the evidence in this case.
 

 In the judgment appealed from, the district court reserved to the plaintiff the right to establish her claim against the succession “by a new and separate action.” At the same time, the court ordered an inventory made “for the purpose of effecting a partition of the estate.” We do not interpret the judgment to mean that the plaintiff can proceed only by an ordinary action against her coheirs, and that, during the delays incident to such proceeding, the property may be sold and the proceeds distributed among the coheirs, who may or may not have other property subject to execution. Such a reservation would be of little or no benefit to the plaintiff; in fact it would go without saying. Our interpretation of the judgment is that the plaintiff’s action may be brought summarily, in the succession proceedings, in which all parties in interest are already before the court, or in the partition proceedings, if there should be a partition; so that the plaintiff may have- credit for whatever claim she may have, in the collation which she is required
 
 *519
 
 to make. It is with that understanding that we affirm the judgment.
 

 The judgment is affirmed at appellant’s cost.