ODOM, J.
 

 Mrs. Amanda O. Ricks died intestate on April 12, 1928, leaving eight children as her sole heirs. On April 9, 1921, she executed a deed, notarial in form, by which she pretended to convey to two of her children, M. Gary Ricks and Clyde C. Ricks, 150 acres of land, which was all she had, for a stipulated consideration of $1,000 paid in cash.
 

 The present suit is by six of the children against the other two, M. Gary and Clyde C. Ricks, to set aside the purported sale by Mrs. Ricks to these defendants and to have the land decreed to be the property of her succession on the ground that, whereas the act purported to be a sale, it was not such in fact, but was absolutely null and void for want of any consideration whatever, and was no more than a donation in disguise. Plaintiffs further allege that their mother delivered to these defendants the proceeds of a policy on the life of one of her sons amounting to $900, the sum of $650 which she obtained from an oil and gas lease, and the sum of $6,900 paid her by the United States government through the Veterans’ Bureau
 
 *737
 
 because of the death of another son who lost his life in the late war, which latter sum had been paid to her in monthly installments of $57.50 from April 3, 1918, to April 12, 1928. It is alleged that defendants obtained these amounts from their mother, appropriated the money for their own use and benefit, and that they should now account to the succession for the total sum thereof. Plaintiffs allege also that defendants are in possession of certain household goods and furniture which belonged to their deceased mother which should he adjudged to belong to her succession.
 

 Defendants pleaded prescription of one, three, four, and five years. The court overruled the plea of prescription of one and three years, and referred the plea of four and five years to the merits.
 

 Defendants answered alleging that the consideration mentioned in the deed was not in fact paid in cash, and that whereas the deed so recites in truth and fact “this one thousand dollars was due to your defendants by their mother for services rendered, which she acknowledged, and money due for services and other matters by their deceased mother to your defendants.”
 

 They admitted that the household goods belonged to her succession, and denied all other allegations of the petition.
 

 There was judgment in the lower court dismissing plaintiffs’ demands as in case of non-suit except as to the household goods, which were decreed to belong to the succession and were ordered sold to effect a partition.
 

 Plaintiffs appealed, and defendants answered the appeal praying that the judgment be amended by maintaining the pleas of prescription of five years. They have abandoned all other prescriptions pleaded.
 

 (1) The purported sale by Mrs. Ricks to these defendants was a sham; a simulation pure and simple. It was utterly void for lack of consideration. The act relied upon by these defendants as evidencing a sale and upon which they base their title to the land involved recites that the vendees paid to the vendor $1,000 cash as consideration for the property. As a matter of fact they paid her nothing at the time the act was passed, nor did they pay her anything before or after the sale.
 

 In their answer defendants alleged that, whereas the act recites a cash consideration, in truth and in fact no cash was paid, but that the $1,000 mentioned was due them for services rendered her. Their pretentions that their mother owed them $1,000 or any amount at all for services rendered her are under the proof administered worse than frivolous; they are absurd. Years ago, six of Mrs. Ricks.’ eight children left home and acquired establishments of their own. But defendants, who were single men, remained at home and lived in (the house with their father and mother until they died in 1928, Defendants testified, as did others, that during the eight or ten years previous tó the'death of these aged people, Gary Ricks, one of‘the defendants, helped his mother do part of the housework. But she was in good health up to within a short time prior to her death and kept house for her enfeebled husband and
 
 *739
 
 these defendants, doing, as we read the testimony, practically all the work.
 

 It is perfectly clear that she did far more for them than they did for her v during the entire time they were living with her.
 

 After attempting to show that their mother was indebted unto them for services rendered, which services, as they alleged in their answer, were the consideration for the sale, they sought to prove that they had loaned her certain amounts prior to the date of the alleged transfer, and that the property was transferred to them in payment of these loans. Upon objection, this testimony was ruled out, and correctly so.
 

 Article 2239 of the Civil Code, as amended by Act No. 5 of 1884, reads as follows:
 

 “Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others;
 
 but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated■ contracts of those from whom they inherit, and shall not be restricted to ’ the legitimate Ilegitime].”
 
 (Italics ours.)
 

 The so-called sale of this land by Mrs. Ricks to these defendants was a mere pretense; a simulation. That no consideration was paid by these defendants was proved beyond question. Under the above article of the Code, as amended by the act of 1884, and under repeated decisions of this court, forced heirs may attack such sales as donations in disguise and may have them set aside if they can prove that no price was paid. Spencer v. Lewis, 39 La. Ann. 316, 1 So. 671; Byrd v. Pierce, 124 La. 429, 50 So. 452; Quirk v. Smith, 124 La. 11, 49 So. 728; Phelps v. Mulhaupt, 146 La. 1078, 84 So. 362, 364; Walsh v. Cayret, 155 La. 1089, 99 So. 885; Eberle v. Eberle, 161 La. 313, 108 So. 549; Bauman v. Pennywell, 164 La. 888, 114 So. 723.
 

 (2) Defendants say this action is barred by the prescription of five years under article 3542 of the Civil Code, which provides that: “The following actions are prescribed" by five years: That for the nullity or recision of contracts, testaments or other acts. That for the reduction of excessive donations.”
 

 This article of the Code has no application to actions brought by forced heirs to set aside the sham, simulated contracts of those from whom they inherit, when brought against those who were parties to them. Under the allegations and the proof here administered, these defendants never had any just title to this property; in fact, they had no title at all. The act under which they claim title was purely fictitious; a sham, a simulation. One whose possession and pretended ownership springs from a pure simulation to which he was a party cannot acquire by prescription. The prescription mentioned in article 3542 of the Code relates to actions of nullity directed against real but fraudulent transactions, but not to actions en declaration de simulation. Guilbeau v. Thibodeau, 30 La. Ann. 1099; Spencer, Adm’r v. Lewis, Adm’r, 39 La. Ann. 316, 1 So. 671.
 

 (3) Plaintiffs’ action on all other points, except as to the furniture, falls for lack of proof. Some eight or ten years prior to her death, Mrs. Ricks came into possession of two lump sums; $900 as the proceeds
 
 *741
 
 of an insurance policy on the life on one of her sons, and $650 received for a mineral lease. Just what she did with all this money is not shown, but the record does show that she paid medical and hospital bills for two of her children amounting to approximately $500. She bought a mule for one of her sons for which she paid $160. She paid a note amounting to $625 for one of her sons. He says he paid that back, but there is other testimony which causes us to doubt it.
 

 She loaned small sums at various times to some of her children and made small donations to them also.
 

 From 1918 to the date of her death ten years later, she received from the government each month a check for $57.50. These cheeks were invariably turned over to one or the other of these defendants to be cashed. They say they delivered the proceeds to their mother, and there is no proof that they did not. At one time certain funds belonging to Mrs. Eicks were- withdrawn from one bank and deposited- in another to the credit of one of the defendants. He says the amount went back into her hands and was used by her, and there is not proof to the contrary.
 

 Under plaintiffs’ theory their mother, whose husband was sick and unable to work for years before his death, spent nothing at all for herself or husband, and that all the money which eame into her possession was turned over to and used by these defendants. They did not nor do we think they can prove that. Aside from the amounts above mentioned, the record convinces us that Mrs. Kicks parted with her money by‘dribs over a period of ten years, and while these defendants may have and doubtless did get more benefit from her bounty than did the others due to the fact that they were living with her and that she proba'bly bore the larger share of the household expenses, yet there is no convincing proof that they had in their possession any sum of money belonging to her, or that they owed her any sum when she died.
 

 The district judge dismissed plaintiffs! demands as in case of nonsuit. That was error. All parties appeared and offered all the proof available. The testimony adduced was not only insufficient to sustain plaintiffs’ demands, except as to the land transaction and the household goods, but it shows that defendants are not indebted to the succession.
 

 For the reasons assigned, it is ordered that the judgment appealed from be set aside; and further ordered and decreed that there be judgment in favor of plaintiffs and against defendants annulling and setting aside the deed dated April 9, 1921, recorded in Conveyance Book 66, page 418 of the records of Bienville parish, by which Mrs. Amanda O. Eicks pretended to transfer to the defendants M. Gary Eicks and Clyde C. Eicks, the S.
 
 %
 
 of N. W. %, S. W.% of N. E. % and N. W. % of S. E. %, less ten acres in S. W. corner of N. W. % of S. E. % of See. 35, Tp. 16 N., Eange 5 West, containing 150 acres more or less; and further decreeing that said land as well as the household goods and furniture described in plaintiffs’ petition now belongs to the succession -of Mrs. Amanda O. Kicks. It is further ordered that all other demands made by plaintiffs be rejected; defendants to pay all costs in both courts.
 

 O’NIEUL,- C. J„ absent.