This is a companion suit to that of the same plaintiffs against James C. Travis, Mock v. Travis, La.App., 7 So.2d 632, this day decided. The legal questions involved in the two cases are similar, but the facts are somewhat different. Like the other suit, this is a suit by two sisters who seek to be recognized as two of the seven children and forced heirs of their deceased father and mother, and to have a sale made by their father to the defendant, Frank H. Travis, their brother, set aside as a simulation, or donation in disguise. They ask to be recognized as the owners of an undivided one-seventh interest each in the tract of land (80 acres) which was conveyed by their father to his son, the defendant herein, on December 23, 1925, for a recited consideration of $1,500 cash. They also ask that the defendant be decreed to account to them for their interest in mineral royalties collected by him from the land.
The defendant admits that his father made a deed to him for the property, and avers that the consideration recited in the deed was paid by him in cash or its equivalent, and that the sale was real and genuine. He admits having collected mineral royalties on the land, but denies that plaintiffs are entitled to any part thereof.
Judgment was rendered in favor of the plaintiffs, recognizing them as owners of an undivided one-seventh interest each in said land, and awarding them judgment against the defendant for the sum of $341.40 each for their share of the rents and royalties collected by the defendant on the land. From this judgment, the defendant has appealed.
At the time this land was transferred to the defendant by his father, the former was a young unmarried man barely twenty one years of age and without any money of his own. The defendant admits that the consideration recited in the deed was never paid in cash, but he claims that the land was transferred to him by his father in payment for work and service performed by him and to be performed by him for his father while living with the latter on his farm.
The account given by the defendant of the manner in which he paid for the land is substantially as follows: that he had been working at home with his father in the year 1924 and left home to get a job for himself; he went to the home of his sister, Mrs. Mock, one of the plaintiffs herein, and worked for his sister awhile, when his father came and asked him to come back home and work for him; that his father agreed to give him his board and lodging and pay him $15 per month; that he went back home and worked for the next year and the crop was so bad that his father could not pay him anything that year and made him a title to the land (which was the home place), in order to pay him for his work, and with the understanding that the son would stay with his father and mother and help work on the place; that he stayed there and worked on the place about four years more, when, at the suggestion of his father, he went to Texas and went in business with his brother James, the defendant in the other suit.
The defendant states that the consideration for the transfer of the land to him was this four or five years' work that he did for his father. He claims that his father paid him no money during that time, but he admits that during that time he got his board and lodging and some spending *Page 636 
money. Moreover, he admits that a good part of his work while he was staying with his father was attending sheep in which he and his father and another brother were interested as partners, and which sheep were sold by the father shortly after the son left home for something over six thousand dollars, the share of defendant being over two thousand dollars which amount was paid to him by his father.
It is thus obvious that the defendant was substantially remunerated for the work which he did on the farm during the time he lived with his father and mother. Indeed, the amount which he received as his share of the sheep venture in which he and his father and another brother were interested during this time was far in excess of the amount which he would have received had he been paid the full amount of $15 per month which he claims his father was to pay him. It appears that the sheep raising venture was one of the principal, if not the chief, sources of revenue derived from the farm. Considering the fact that the defendant was a young unmarried man, living with his father and mother and receiving this liberal consideration from his father in the sheep venture, it appears very unlikely to us, as it did to the trial judge, that this young man did not receive everything that he was entitled to while staying with his father and mother. His brothers and sisters, before they left home, worked on the farm and did not receive, or expect to receive, anything for their service other than their living as members of the family.
Another strong circumstance going to show the unreality of the sale is the fact that the father continued to occupy the place after he transferred it to his son for practically the remainder of his life, some 12 or 13 years. He claimed ownership of the property and exercised acts of ownership over the property during this entire time, including the farming of the property, selling timber therefrom, renting the land in his own name, entering the land as his own under the government acreage reduction program, receiving and using the checks and allowances from the government on account of this program, and in fact, completely ignoring any outstanding title to the property in any one else.
Regardless of the question of whether or not the retention of possession by the father in this case shifted the burden on the defendant of proving the reality of the sale as provided for in Article 2480 of the Civil Code, we are of the opinion that this circumstance must be considered as affording strong proof of the simulated character of the sale. Indeed, this circumstance, coupled with all the other facts and circumstances shown by the record, is sufficient, in our opinion, to show with reasonable certainty that there was no real consideration for the sale.
There seems to be no question as to the amount collected by defendant from rents and royalties on the property.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of appellant in both courts.
LeBLANC and DORE, JJ., concur.