The plaintiffs, Mrs. Sallie Mock and Mrs. Elizabeth Whitely, are daughters and two of the seven children and forced heirs of Henry W. Travis and his wife, Rebecca Travis. The father and mother of plaintiffs died in 1938. This suit is against James C. Travis, a brother of the plaintiffs and one of the seven forced heirs, to have set aside as a simulation, or a disguised donation, a deed made by Henry W. Travis, the father to the defendant son, James C. Travis, in September, 1933, wherein the father purported to sell to his said son 160 acres of land for a recited cash consideration of $1,500. It is further alleged that the defendant has leased the mineral rights on the land and collected approximately $3,200 in royalties therefrom. The plaintiffs pray that they be recognized as two of the seven forced heirs of their deceased parents; that the aforesaid purported act of sale by their father to James C. Travis be declared null and void, and that they each be decreed the owner of an undivided one-seventh interest in the land, and that the defendant be ordered to account for all mineral royalties collected by him from said land, and that he be ordered to pay plaintiffs each a one-seventh thereof.
The defendant admitted the transfer of the property to him by his father but denied that the sale was simulated or a disguised donation. He avers that the consideration recited in the deed was real and serious, and that it was fully paid by him in cash or its equivalent. He admits having received the amount of mineral royalties set forth in the petition, but he denies that plaintiffs are entitled to any part thereof.
There was judgment below in favor of the plaintiffs setting aside the deed and recognizing plaintiffs as forced heirs of their deceased father and mother and as such the owners of an undivided 1/7th interest each in said land. They were each given a judgment against the defendant for $502.80, being l/7th of the mineral royalties collected by defendant on the land. The defendant has appealed.
The defendant admitted as a witness that the recited consideration of fifteen hundred dollars was not paid at the time of the signing of the deed, nor was it paid in cash at any other time. He claims that his father transferred the land to him in 1933 for a debt which his father owed him. This debt he claims originated in the following manner: that he let his father have a team of four mules and a wagon in 1916 worth $500; that he let his father have $165 in 1917 with which to buy a car; that he gave him a brown mare worth $60 and a bonus check for $60 in 1918 or 1919, and a year or two later, he let his father have a car which the latter sold for $200. On this amount, he states that there was a credit of $200 given his father in 1923 resulting from some trades and deals between him and his father.
The defendant was living in Texas when this deed was made to him by his father, and he has lived in that state ever since he claims to have bought the land. His father, who continued to live near the land which he had transferred to his son, sold the timber on the land and collected and used the money received from the sale of the timber. There is considerable evidence in the record to the effect that the father claimed to own the land and the timber for two or three years after he had made the deed to his son. It is true that *Page 634 
the defendant claims that the timber on the land was to be retained by his father, but there is no reservation to that effect in the deed.
There is some testimony in the record to the effect that the father stated to some of his children that he owed his son James an old debt; that he had sold the land to James to pay this debt, and that he referred to his son two men who were seeking mineral leases on the property, and stated to them that the property belonged to his son. However, regardless of whether the father had received any consideration for the sale of the land to his son, he recognized the fact that the deed stood in his son's name and knew that a lease of the land would have to be signed by the person in whose name the land stood on the records. Moreover, his acts and statements indicating that he still considered himself the owner of the land outweighs any statements which might be construed as a recognition on his part of the validity of the sale to his son.
But the weakest part of defendant's case is the improbability of the existence of a debt due by the father to his son to serve as a consideration for the sale. With reference to the sale of a mule team by the son to his father in 1916, the son at that time was only 16 or 17 years old, was living with his father and working with him in some logging operations. While the son may have driven this mule team and claimed to own the team, yet the fact remains that his father furnished the money with which to buy the team and had charge of the logging operations. We cannot understand how a minor, living with his parents could acquire the ownership of a mule team which his father purchased for use in his logging operations, even though the team was driven by the minor son for his father. The same thing can be said as to the other amounts which the defendant claims to have advanced to his father while he was still a minor. It is admitted that this minor son had no property of his own, and the only way that he could buy and own a car, a horse, or a mule team, was by having his father furnish the money and allowing his son wages for his work.
A minor son remains under the authority of his father and mother until his majority, and in return for the support which the parents owe to the child, the child owes a duty to the parents to obey them and render them assistance when they are in need. C.C. art. 215 et seq. When we consider this circumstance, together with the fact that the father made practically no mention of this debt which the son claims that the father was due him over a period of some 15 years, coupled with the further fact that the father continued to exercise acts of ownership over the land after he had transferred it to his son, we are forced to reach the same conclusion, as did the trial judge, that there was no real and valid consideration to support this sale from the father to the son.
The sales of immovable property made by parents to their children may be set aside by the forced heirs, as containing a donation in disguise, if these heirs can prove that no price was paid, or that the price paid was less than one-fourth of the value of the property sold. C.C. art. 2444. We do not deem it necessary to pass on the question presented in the briefs as to whether the plaintiffs have the burden of proving that no consideration was paid by the defendant, or whether the burden rests on the defendant to prove the reality of the sale for the reason that the father. (as claimed by plaintiffs) remained in possession and control of the land, thereby throwing on the defendant the burden of proving the reality of the sale under Article 2480 of the Civil Code. In our opinion, the plaintiffs have proved such facts and circumstances in this case as to lead to no other reasonable conclusion but that there was no consideration to support the transfer of this property by the father to the defendant son. See Smelley et al. v. Ricks et al.,174 La. 734, 141 So. 445; Giles v. Kelly, 162 La. 512,110 So. 738; Peyton et al. v. Roth, 149 La. 147, 88 So. 773.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed at the cost of appellant in both courts.
LeBLANC and DORE, JJ., concur. *Page 635