JANVIER, Judge.
This rather involved litigation was initiated by Michael Cannella, a son of the late Vincenzo Cannella, when the former filed a foreclosure proceeding against the succession of the latter on a note for $1,-045.00 secured by mortgage on the latter’s interest in a certain piece of real estate in New Orleans, known as 2411-2413 Royal Street.
The plaintiff, in the-foreclosure proceeding, caused citations, together with copies of the petition, and notices of seizure to be served on all of his brothers and sisters' and the children of a predeceased brother and, haying qualified as the executor of the . estate of his father, he also made himself, as executor, defendant in the foreclosure proceeding.
Vincenzo Cannella, at his death, left seven children and three grandchildren, children of an eighth child who had previously died. The seven living children were Michael Cannella, Mrs. Josephine Cannella, wife of Anthony DiGraci; Mrs. Annie Cannella, wife of Louis Giglio; Mrs. Louise Cannella, wife of Mike Massaro, Anthony Cannella, Joseph Cannella and John Cannella. The three children of the predeceased Vincent Cannella were Vincent Charles Cannella, Jr., a minor, Mrs. Shirley Marie Cannella, wife of Howard Gerald Stanley and Mrs. Muriel Ann Cannella, wife of Louis George Quader. The minor son of Vincent Cannella is represented by his mother, Mrs. James Floyd Porter, whose first husband was Vincent Cannella and who has qualified as his tutrix, and the two married daughters of Vincent Cannella are also represented by their mother, Mrs. James Floyd Porter, under powers of attorney issued to her by them.
In order that the family status may be better understood, we shall divide the eight children of Vincenzo Cannella into two groups, one consisting of three of the sons and the three children of the predeceased son, and the other group consisting of the fifth son, Michael Cannella and the three daughters. When Michael Cannella filed the foreclosure suit,; the first group, Anthony, Joseph, John and the children of the predeceased Vincent Cannella sought to enjoin hipi from proceeding with .the foreclosure on the alleged ground that they were the owners of the property in question; that it did not belong to their deceased father, Vincenzo Cannella, at the time of the execution of the mortgage held by Michael. The other four children, to-wit the three daughters and Michael, intervened — Michael in his individual capacity, as well as in his capacity as executor of the estate of Vincenzo Cannella, and they alleged that the document on which the other group bases its claim, that they were the owners of the property and that it did not belong to their father Vincenzo, to-wit a counter letter from Vincenzo, was a simulation and not genuine. They alleged, in their intervention, that, as a mat-tir of fact, their father Vincenzo had ac *379 tually bought the -property, that the mortgage executed by him in favor of Michael was genuine and bore- against the property and that after the payment of the amount due Michael, the remaining proceeds should be divided properly among the children according to law.
There was judgment in the Civil District Court for the Parish of Orleans in favor of Anthony Cannella, John Cannella, Joseph Cannella and the three children of Vincent Cannella, enjoining the proceedings under the writ of seizure and sale, and there was further judgment in favor of Anthony Can-nella, John Cannella, Joseph Cannella and the three children of Vincent Cannella decreeing them to be the true and lawful owners of the property in question, and there was further judgment declaring the property to be free and clear of the mortgage executed by Vincenzo Cannella in favor of Michael Cannella-.
From this judgment Michael Cannella and his three sisters appealed devolutively and suspensively to the Supreme Court of Louisiana. When the matter was heard before the Supreme Court, that court “sua sponte” held that it was without jurisdiction ratione materiae, saying that since, in the original suit, that is to say in the foreclosure proceeding, there was involved less than $2,000.00, the appellate jurisdiction should be determined by that amount and was not affected by the fact that in the incidental demand (the injunction proceeding) there was involved the question of title to the property, even though the value of that property exceeded $2,000.00 by a substantial amount. The Supreme Court transferred the matter to this Court. See Michael Cannella v. Succession of Vincenzo (Vincent) Cannella, 216 La. 464, 43 So.2d 795.
The appellees, that is the three sons and the three children of Vincent Cannella (the predeceased son), base their claim to ownership on a counter letter which was. executed by their father by act passed before Guy J. D’Antonio, notary public, on April 22, 1929, but not' registered in the office -of the Register of Conveyances of the Parish of Orleans until August 15, 1942. This is one of the circumstances which is pointed to by the appellants as justifying suspicion as to the genuineness of thát transaction. In this - counter letter it is recited that by act before Felix J. Drey-fous, notary public, on March 17,- 1918, the property was transferred by Louis Spiro to Vincenzo Cannella, but that the title was placed - in Vincenzo’s name only for- convenience and that the property was in reality purchased for the -account of Joseph, Anthony, John and Vincent; that in 1925, by act before Arthur Leopold, notary public, - Vincenzo Cannella transferred -the property to his said four sons who were the actual owners; that in 1927, Vincent Can-nella found it necessary to borrow $1200.-00-, and that in order for Vincenzo to raise this $1200.00, the four sons named transferred the property.to the Italian Homestead Association which, in turn then transferred it to. Vincenzo, the father,, subject to a mortgage, of $1200.00; that the said $1200.00 debt had been paid;- that in the said counter letter Vincenzo declared that he bound -himself, his heirs, executors or administrators to transfer the property to his said four sons when required to do so, without consideration, since he, Vincenzo, in reality had not paid any consideration for the property, and in the said counter letter Vincenzo further declared that the said four sons had put the property in his name “for convenience and for the purpose of giving unto the said Vincenzo Can-nella and his wife, Mrs. Mary Tramuta Cannella, the usufruct and use of the said property- during the life of the said Vin-cenzo Cannella and his wife, Mrs. Mary Tramuta Cannella, without any charges whatever.”
Since the -registration of the counter letter in the Conveyance Office, though made some thirteen years after its execution, was effected before the execution of the mortgage which Michael Cannella seeks to foreclose, it is apparent that any transaction affecting the property had after the recordation would be.subject to the counter letter, if genuine. Therefore, the entire question which faces us is whether or not that counter letter is genuine. Since the Supreme Court, in transferring the matter to us said that we have jurisdiction to pass upon the incidental question of title, we *380 shall consider all of the evidence touching upon that counter letter in an effort to determine whether the three sons and the children of the deceased son have or have not good and valid title to the property in question, since upon that issue hinges the right of Michael Cannella to proceed under the writ of seizure and sale.
Counsel for Michael Cannella and his three sisters, who maintain that the counter letter is a simulation, direct attention at the very outset to the fact, which they chara'c-terize as most suspicious, that although the children claim to own the property and claim that their ownership is evidenced by the counter letter which was executed in 1929, they allowed their father, Vincenzo, to occupy the house from the time of the first purchase, in 1918, in his name but for their account, until his death in 1946, twenty-eight years after the purchase and seventeen years after the execution of the counter letter. They maintain that because of the effect of Article 2480 of our Civil Code, this places upon those who claim under the counter letter the burden of overcoming the presumption of simulation. That article reads as follows: “In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
In Mock v. Travis, 7 So.2d 635, 636, the Court of Appeal for the First Circuit considered a somewhat similar situation and said: “Regardless of the question of whether or not the retention of possession by the father in this case shifted the burden on-the defendant of proving the reality of the sale as provided for in Article 2480 of the Civil Code, we are of the opinion that this circumstance must be considered as affording strong proof of the simulated character of the sale. * * * ”
In Dupuy’s Heirs v. Dupont, 11 La.Ann. 226, the Supreme Court held a purported sale to a daughter to be a disguised donation where the facts were as follows: “Several years before his death, a father sold to defendants, his daughter and her husband, half his land and all his slaves. There was no change of possession, and until his death vendor, though vendees lived in his house, continued to control property exclusively as owner, * *
Counsel further call attention to the fact that if the counter letter is a simulation and it is not annulled, it will have the effect of illegally depriving certain of the forced heirs of Vincenzo of their legitime and they assert therefore that because of Articles 2444 and 2239 of our Code it may be attacked by those forced heirs and that parol evidence touching upon the alleged fraud may be offered in an effort to annul the counter letter. Those articles read as follows:
“The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.”
(Article 2444)
“Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate (legitime).”
(Article 2239)
Counsel cite Spencer v. Lewis, 39 La.Ann. 316, 1 So. 671, and Smelley v. Ricks, 174 La. 734, 141 So. 445, as typical of many cases in which such transactions have been held to be simulations which would have illegally deprived forced heirs of their rights.
There are many suspicious' circumstances which are pointed to by counsel for both groups of litigants. Those who claim under the counter letter say that in 1913 they made arrangements to buy the property from one Louis Spiro and that by act before Felix J. Dreyfous, on May 17, 1918, the property was transferred from Spiro to their father, Vincenzo 'Cannella, for $1,-000.00 for which he executed a note secured *381 by mortgage and that the four of them subsequently paid the note. They contend that they paid it by giving Spiro small, amounts periodically.
. The other group points out that the four who claim to have been paid the note would all have been too young at the time at which they claim to have earned the money with which they paid it, much too young to have earned it, and they say, too, that during a part of that time some of the four sons were in the military service and earning the very meager pay which was given to the members of the military service during the First World War. They say also that the note could not have been retired in small payments made periodically, since endorsements on the note show that it was retired by two payments, one for $400.00 on May 19, 1919, and one for $600.00 made on May 19, 1920. Those who claim title under the counter letter reply that in spite of their tender years, they earned small amounts and devoted them to the making of small payments to Spiro, and they say that though the endorsements on the note would indicate that it was retired in two large payments, the reason for that was that Spiro allowed the small payments made periodically to accumulate and then entered the payments on the reverse of the note when a substantial amount had been accumulated. Spiro’s son, who was placed on the witness stand, apparently without warning that he would be called, says that he handled this transaction for his father .and that small periodical payments were made and that endorsements were entered on the reverse side of the note only when a substantial amount had been accumulated.
There are many facts which are relied on by those who claim under the counter letter as indicating that their father and, in fact, all of his children, well knew that he was not the owner of the property. For instance, it is shown by the testimony of Michael Cannella himself, he being the plaintiff in the foreclosure proceeding and contending that his father who executed the mortgage, was the true owner of the property, that he was- occupying a part of the property as tenant and that he paid rent to Joe who received it for account of himself and his other two brothers and Vincent’s children.
It is admitted by Michael that on October 22nd, 1946, he received from the Federal Rent Control Office a copy of the “Registry” showing that the property belonged to Joseph, Anthony, John and Vincent Cannella and that he did nothing about it. We think this quite remarkable in view of the fact that at that time he was the holder of a mortgage note on the property which he says he thought was owned by his father, who had executed the mortgage.
Michael also admitted that while his father Vincenzo was still living, Joe, one of those who claim under the counter letter, desiring to move into a part of the property, gave notice to the tenant to move on the ground that he, Joe, as one of the owners, wanted the property for his own use. Michael made no contention at that time that Joe was not an owner. It also appears that Michael called upon Joe to have the roof fixed and he admits that “they had it fixed.”
It appears, toO, that Leslie Winn, an employee of the Sewerage & Water Board, on or about November 23, 1946, which was after the death of Vincenzo, the father, went to the property “to read the meter and to get the condition of the premises.” This visit was obviously made because the transfer of the meter was made necessary by the death of Vincenzo.
The record shows that when Winn called he met Mrs. Michael Cannella, the wife of the plaintiff in the foreclosure proceeding, and told her that it was necessary to have some sort of document signed, and that he was told by Mrs. Michael Cannella “to go to the owner to get it signed.”
Even though Michael was executor of the estate of his father, he made no claim against- Joe for rent because of his occupancy of a part of the property and made no claim for the rent which was being paid to Joe by others who occupied a part of the property. Most significant of all, Michael paid his own rent for part of the property occupied by him, and he paid it to Joe and not to himself as executor of his father’s estate.
*382 • There is much conflicting testimony from neighbors and friends, some of whom say that it was' well known that the property belonged to Joe and his group, and some of whom say that everyone knew that the property belonged to Vincenzo.
There is no denying the fact that in 1927 the property stood in the name of Joe Can-•aella and those who now claim with him, and that it was transferred to the Italian Homestead Association and then transferred from that Association to Vincenzo, the father, and there is no contradiction of the fact that this was done because Vincent desired to borrow $1.200.00 which was loaned by the Italian Homestead Association, and we find no contradiction of the fact that this $1200.00 was repaid by Mrs. Vincent Cannella from the insurance on the life of Vincent after his death.
As against these facts, it appears that on June 17, 1945, Vincenzo made a nun-cupative will by public act in which he at least indicated that the property belonged to him, and it is testified to by the notary public who made that will that he did not know who owned the house but that it was his belief that when Vincenzo referred to the “home in which I am now living”, he intended to convey the idea that the property belonged to him. It is shown that one of the brothers, who claim title .under the counter letter, though present in court, did not testify, and this is said to be suspicious. There are many contradictions in the testimony of many of the witnesses as to the amount paid for the property. All in all were it not for the fact that our brother of the district court has found that the counter letter is not a simulation, we would find it most difficult to reach a conclusion on this very much disputed question of'fact. Even, however, if it be conceded that the burden of proof is on those who claim under the counter letter, we think that it cannot be said from this record that the finding of the district court on that question of fact was incorrect. There is ample evidence, if believed, to justify the conclusion that those who claim under the counter letter were actually the owners of the property and, since our brother of the district court believed that evidence, we find nothing in the record which would justify a reversal.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.