159 So.2d 439 (1964)
J. M. MENEFEE et al., Plaintiffs-Appellees,
v.
Samuel W. PIPES, Jr., et al., Defendants-Appellants.
No. 10048.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1963.
Rehearing Denied January 9, 1964.
Writ Refused March 11, 1964.
*440 W. F. Pipes, Monroe, Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellant.
Thompson, Thompson & Sparks, Monroe, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
GLADNEY, Judge.
This petitory action was brought by the heirs of William Johnson and James Green, twenty-six in number, and their mineral lessee, J. M. Menefee, to secure recognition of their ownership of a forty-acre tract of land situated in Ouachita Parish, Louisiana, and to require an accounting of the value of gas and condensate produced by the N. D. Morgan No. 1 Well. Named as defendants are the heirs of S. W. Pipes and their mineral lessee, Arkansas Louisiana Gas Company. Admittedly, the plaintiffs, through warranty deed from Aaron Parker *441 dated October 11, 1881, are the true record owners of the land in dispute and the interest of each is as set forth in the petition. The title claim of defendants is founded on possession and the ten years acquisitive prescription provided by Article 3478 of the LSA-Civil Code. It is premised on a warranty deed executed April 30, 1914, from Clem Roberson to S. W. Pipes and possession exercised by Clem Roberson after that date. Plaintiffs opposed the plea of prescription and upon that issue the case was tried and judgment rendered rejecting the contentions of the defendants. They have appealed.
The record reveals that after having lived on the property for years, about the year 1900 the heirs of William Johnson and James Green moved away and abandoned it. The land was forfeited to the State of Louisiana for the taxes of 1883, it being assessed for that year in the name of Alfred Johnson, who was not an owner. In 1882 there was another erroneous assessment of the property to E. S. Parker, who paid the taxes assessed. An adjudication, however, was made to the state for the 1882 taxes[1] and redemption of this sale was only effected in 1962 when J. M. Menefee procured and recorded a deed of redemption.
Appellants assign error to the judgment of the trial court: (1) in holding that the acquisitive prescription was suspended or interrupted by the duration of the title in the state from 1883 to 1962, notwithstanding the provisions of LSA-R.S. 9:5803; (2) in holding that the 1914 deed from Roberson to Pipes was simulated; and (3) in failing to sustain the defendants' plea of ten years' acquisitive prescription.
Appellants' plea of prescription is opposed by appellees for the following reasons: (1) the acquisitive prescription of the Pipes was suspended while title was vested in the State of Louisiana by virtue of the tax forfeiture; and (2) the deed of April 30, 1914, from Roberson to Pipes is denominated a simulation by operation of the unrebutted presumption established by Article 2480 of the LSA-Civil Code.
Considered first is the contention of appellees that acquisitive prescription was barred during the period title to the property in controversy was vested in the state. Resolution of the question leads to the interpretation and application to the case at hand of the statutory provisions of Article 19, Section 16 of the LSA-Constitution and LSA-R.S. 9:5803. The Constitution provides:
"Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law."
LSA-R.S. 9:5803, formerly Act No. 310 of 1936, states:
"In all cases where immovable property has been, or may be, adjudicated or forfeited to the state for nonpayment of taxes and has been or is subsequently redeemed by a purchaser in good faith and by just title, or by the heirs or assigns of such purchaser, prescription shall not be interrupted or suspended during the period that title is vested in the state. This Section shall not apply to or affect the three-year prescription provided by law for tax privileges, and in all cases where immovable property has been adjudicated to the state for non-payment of taxes, such property shall only be redeemed upon paying the amounts provided by law."
Counsel for appellees insist that the exception so provided in the statute sanctions *442 the running of acquisitive prescription only by a purchaser in good faith and by just title, or by the heirs or assigns of such purchaser, who has effected the redemption. Appellees fulfilled the requirement of "a purchaser in good faith and by just title, or by the heirs or assigns of such purchaser." This much is admitted in appellants' brief. Appellants assert that S. W. Pipes likewise was in truth a purchaser in good faith and by just title.
Appellants rely upon the provisions of LSA-R.S. 9:5803 to avoid the constitutional provision suspending prescription and hold that a literal interpretation of the statute applied according to natural law and reason supports their viewpoint. It is argued the statute does not impose the condition, express or implied, upon a possessor pleading prescription that he must secure the redemption, but to contrary, they contend the act of redemption inures to the possessor, whether or not he obtained the redemption, the only requirement in the law being that the possessor be a purchaser in good faith and by just title. Further, it is affirmed that for reasons of an equitable nature they should be afforded the protection of the law. Appellants' argument urges that the purpose of the statute was primarily to enable the state to secure the money it was entitled to through redemption; that there was no reason to interfere with the property laws of Louisiana and, therefore, redemption has been permitted by any person having an interest in the land by whomever made, and that such redemption is made available for and inures to the benefit of a lawful owner.
The equities in their favor claimed by defendants are listed as: (1) the tax adjudication was made in the name of one who never owned the land; (2) E. S. Parker paid his 1882 taxes under an assessment erroneously describing the subject property; (3) appellees have been out of possession and paid no taxes for about 60 years; (4) appellants have possessed and paid taxes on the property for 50 years; (5) and, finally, that appellants attempted to and would have redeemed or canceled the 1883 adjudication except for the error of the Register of State Lands' Office in not finding the adjudication. The aforesaid equities may be considered only insofar as embraced within the meaning and intent of the statute.
The controversial language of the statute appears to have been construed by our courts but once, and then in Saucier v. E. Sondheimer Company, 212 La. 490, 32 So. 2d 900 (1947), wherein the defendant pleading ten years' acquisitive prescription was a purchaser in good faith and by just title and had redeemed the property there in dispute from an 1894 tax adjudication. The plaintiff therein, the record owner of the property, contended the benefits of the statute inured only to the party against whom the adjudication was made. The same premise is advanced by plaintiffs herein. In the case at hand, however, it may be pertinent to observe that Alfred Johnson, the party in whose name the forfeiture was made, was not a record owner, the assessment being in error as to true ownership.
In rejecting the arguments of plaintiffs in Saucier v. E. Sondheimer Company, supra, to the effect that the benefits of the statute inured only to the party against whom the adjudication was made, the court replied:
"It is conceded that the defendant redeemed the tax sale from the state in 1941 and paid the full price of redemption, although the certificate of redemption was issued by the state in the name of W. D. Chew, the original tax debtor. Act No. 175 of 1934, which amends Act No. 41 of 1912, provides that any person interested personally in property which has been adjudicated to the state for unpaid taxes may redeem it and that all certificates of redemption issued under the provisions of the act shall run in the name of the tax debtor.

*443 "The plaintiff contends that the benefits of Act No. 310 of 1936 can enure only to the person who had lost the property at the tax sale. We cannot agree with that construction placed upon the act by counsel. As we appreciate it, Act No. 310 of 1936 was enacted for the benefit and in the interest of a person occupying a position similar to that of the defendant. The property must be redeemed by a purchaser in good faith and by just title, or by his heirs or assigns. The term `just title' is defined by Article 3484, Revised Civil Code, as follows:
"`By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property.'
"A possessor in good faith, according to Article 3451, Revised Civil Code, `* * * is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.' And, in matters pertaining to prescription, good faith is always presumed. Revised Civil Code, Article 3481.
"E. Sondheimer Company is a purchaser in good faith and by just title, and redeemed the property from the tax sale. We construe the act to mean that when redemption is effected by a party such as the defendant, prescriptions shall not be interrupted or suspended during the state's proprietorship of the property. We conclude that defendant is entitled to invoke the benefit of the act and our opinion is that its claim of ownership acquirendi causa is well founded." (212 La. 490, 32 So.2d 903).
It must be observed that E. Sondheimer Company had redeemed the property from the tax sale, that it was a purchaser in good faith and by just title, and was attempting to establish its claim of ownership through prescription acquirendi causa. For the purpose of resolving the issue herein presented appellants must be regarded as a purchaser in good faith and by just title. They did not, however, effect the redemption, although this may have been brought about solely by the error of the State Land Office. Unquestionably, we think, the primary purpose of the statute was to restore the property to someone with a potential legal right thereto, and to receive the accrued taxes due the state. Where conflicting claims of ownership arise several claimants may be considered as purchasers in good faith and by just title, such as one in good faith relying upon prescriptive title to cure a defective deed. When property adjudicated to the state for taxes has been redeemed and all taxes due paid, the state no longer needs protection against prescription. There was no special reason for the Legislature, therefore, to bar the right of the owner relying upon a prescriptive title, unless he should precede all others in obtaining the redemption. In rejecting plaintiffs' argument, the court in Saucier v. E. Sondheimer Company, supra, recognized that the true record owner was not the sole beneficiary under the statute. The words "prescription shall not be interrupted or suspended" could only imply that the Legislature did not intend to remove the protection of the laws pertaining to prescription, as between private claimants, since the state after redemption no longer had any interest in the property. It is our conclusion, therefore, that if S. W. Pipes was a purchaser in good faith by just title (and arguendo, we assume this to be true), then his heirs are entitled to all benefits that accrue by reason of the redemption.
*444 Appellees assert that the deed by which Pipes acquired the property from Roberson is denominated a simulation by operation of the unrebutted prescription established by Article 2480 of the LSA-Civil CodeCounsel for appellants say the evidence refutes the presumption of the Codal Article resulting from a period of possession and occupancy by Clem Roberson following his execution of the deed to Pipes.
Article 2480 reads:
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
On this question the trial court held the transfer to be an act of simulation, saying:
"In this instant case there is no evidence to contradict the presumption of a simulation at the time of this deed in 1914. The only evidence concerning this sale other than the deed itself is the testimony of Mr. W. F. Pipes on page 145 of the transcript. Mr. Pipes' testimony is that in about 1920, Clem Roberson had a conversation with him concerning the re-purchase of this piece of land from Mr. S. W. Pipes, Sr. Actually Mr. Pipes' remembrance of the conversation between himself, Clem Roberson and his father, S. W. Pipes, indicates that as of that date this deed was held in their minds to be a type of security device for the payment of a debt owed by Clem Roberson to Mr. S. W. Pipes, Sr. The offer to buy back does not contradict the presumption of simulation and lack of good faith but rather this testimony would support the presumption of simulation, indicating that the instrument was not in reality what it purported to be. This evidence certainly does not rebut the presumption of simulation."
* * * * * *
"In the instant case there is no positive evidence that Clem Roberson or his heirs ever possessed for the benefit of Pipes. We have the unexplained possession by Clem Roberson from prior to the simulated sale in 1914 until at least 1924 or 1925. There is no testimony concerning those years and the type of possession Clem Roberson exerted. If Mr. Pipes' testimony, referred to earlier, is indication of a security arrangement, it would follow that Clem Roberson possessed for himself. The testimony clearly shows that beginning in 1924 or 1925 Clem Roberson possessed for himself and adversely to all parties."
* * * * * *
"The testimony is very clear that the vendee, S. W. Pipes, did not reap any benefits from the property purported to be transferred by the 1914 deed until around the year 1952. All of the evidence shows adverse possession claimed by Clem Roberson and his heirs until that date."
Reference to the 1914 deed discloses that it neither stipulated a right of redemption in favor of Roberson nor did it indicate a security contract. Appellants assert the deed was genuine and title to the property passed to S. W. Pipes.
This court in McDonald, et al. v. Howard, et al., La.App., 84 So.2d 247 (2d Cir. 1955), had occasion to define simulation and refer to its effect, saying:
"`A simulation is a feigned, pretended actone which assumes the appearance without the reality. Since the act is entirely without effect, it is held not to have existed, and for that reason may be disregarded or attacked collaterally by any interested person.' `The Action in Declaration of a Simulation' by John Wood Anthony, 17 T. *445 L.R. 457. A total want of consideration is essential to support such an action. So, where the contract sought to be annulled has some reality and there is some consideration, even though inadequate, the creditor may not resort to the action in declaration of a simulation."
As pointed out by the trial court, Pipes' vendor, Clem Roberson, continued in possession through himself and his heirs and enjoyed the fruits of the property from 1914 until about the year 1952, when possession was first exercised by the Pipes heirs. Roberson's possession, therefore, brings up for consideration the application of LSA-Civil Code Article 2480 and imposes upon the appellants the requirement that they "must produce proof that they are acting in good faith, and establish the reality of the sale." The presumption that the sale is simulated may be overcome by proof of consideration, even though inadequate.
Counsel for appellants remind us that the sale took place almost fifty years before this suit was tried, and that every person who had any actual knowledge, as of its date, of the background or details of the transaction, is gone. The only evidence that defendants have tendered, and undoubtedly it includes all pertinent circumstances available, for the purpose of discharging defendants' responsibility under the LSA-Civil Code Article 2480, is thus summarized:
Clem Roberson was a regular customer of Mr. Pipes' store and Pipes had mortgages on his land, including the land here in question; Pipes appeared as a witness on a correction deed Roberson executed, several years prior to Pipes' 1914 deed, in which Roberson agreed to a correction of the description of a deed to the land, which he had previously obtained from S. H. Peevy; Peevy and Pipes, both living in the village of Calhoun, had some business relations, including for a time a partnership in a cotton ginning business; Roberson was in possession of the land at the time of the sale to Pipes and remained in possession afterward; On several occasions, beginning about 1919, Roberson tried to buy the land back from S. W. Pipes; There is no positive evidence as to whether Roberson did or did not pay rent to Pipes in the early years after the sale; $100, the consideration recited in the deed, was a fair price for the land in 1914 when S. W. Pipes bought it; The deed from Roberson to S. W. Pipes referred to the previous deed from Peevy in 1906, which, in turn referred to Peevy's deed of acquisition in 1905; if Mr. Pipes had traced these references back on the records, he would have found the misdescription.
Plaintiffs adduced contradictory evidence to the effect that from 1914 until his death after 1950, the vendee, S. W. Pipes, did not set foot on the land, and without receiving rent or other remuneration did not interfere with Clem Roberson when he alone rented the land to at least four tenants, collected and kept all the rent, attempted to sell the land on at least three occasions, told everyone who would listen that he, Clem, was the owner thereof, and entered into numerous contracts, two of which are in evidence, with the United States of America wherein he declared under oath that he was "owner" of the land here in dispute.
After carefully weighing all of the testimony and evidence presented through the record on behalf of defendants, we find it insufficient to overcome the presumption that the conveyance to Pipes in 1914 was a simulation. Accordingly, we hold that the 1914 deed was simulated and cannot constitute just title for purposes of the ten years' acquisitive prescription. Thus, it was said in Liles, et al. v. Pitts, et al., 145 La. 650, 82 So. 735, 744 (1919):
"It would hardly be contended that one who had acquired by notarial act a tract of wild land which had never at any time been in the actual possession of his vendor, and who never went into possession himself, could acquire by *446 the prescription of 10 years against the valid claims of third persons. It follows, therefore, that the prescriptive bridge, under any such theoretical or constructive possession, must be anchored to the foundation stone of the vendor's possession, and, when so anchored, if the vendor be in bad faith, the foundation crumbles, and the bridge is destroyed; whereas, if he take actual corporal possession, he is not dependent upon the possession of his vendor, and may plead his own act as the basis of his right."
See also: Arnold v. Sun Oil Company, et al., 218 La. 50, 48 So.2d 369 (1950).
Finally, it is contended that by virtue of the provisions of LSA-R.S. 9:2721, Arkansas Louisiana Gas Company, as mineral lessee of the Pipes remains unaffected by the failure of its lessor's title.
LSA-R.S. 9:2721 provides:
"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties. Acts 1950, 2nd Ex.Sess., No. 7, § 1."
Arkansas Louisiana Gas Company is in the position of holding no deed or title whatever from the Johnson-Green heirs nor have they any muniment of title of record upon which they could have possibly relied in taking its lease from one whom the public records disclosed was not the owner.
It follows from the reasons hereinabove stated that the judgment considered on this appeal is affirmed as rendered and signed by the Fourth Judicial District Court for Ouachita Parish, reading:
It is by reason thereof ordered, adjudged and decreed that defendants' plea of 10 years' acquisitive prescription be and it is hereby overruled and, accordingly, that Josephine Mimes, Emile Elbert, Allen Johnson, Pearlie Johnson Hayes, Rufus Johnson and Mose J. Johnson, in the proportion of an undivided 1/16th interest each, and Lucille Harrison, Charlce Harrison Minnefield, Wency Ann Harrison Starks, Mary Ellen Robinson, Noda Harrison and Joel Harrison, in the proportion of an undivided 1/24th interest each, and Willis Jenkins Cobin, Daisy Jenkins Marbray, Joseph Jenkins, Elson Jenkins, Jr., Wash Andy Jenkins, Minerva Jenkins Lewis, Johnny C. Jenkins and Joshua Jenkins, in the proportion of an undivided 1/40th interest each, and C. H. (Buster) Green, Edith Green Nedd, Willie Green Nedd, Queenie Green Little, Nina Mae Green Evans and Sam Brown, in the proportion of an undivided 1/48th interest each, have and recover judgment against defendants, Arkansas Louisiana Gas Company, Samuel W. Pipes, Jr., Elizabeth Pipes Baker, Q. B. Pipes, Mrs. Mary Lou Pipes Wilder, Ida Pipes Kyser, Elsie Pipes Heck, Bishop N. Pipes, William F. Pipes and J. Y. Pipes, recognizing plaintiffs as the owners, and, as such, sent into possession of the following described property, together with all oil, gas and other minerals lying in, on or under said land, situated in the Parish of Ouachita, State of Louisiana, to-wit:
"NW ¼ of SW ¼, Section 2, Township 17 North, Range 1 East, being a portion of the same property described in deed dated October 11, 1881 from Aaron F. Parker to James Green and William Johnson, of record in Conveyance Book Y, page 358, Ouachita Parish, Louisiana."
It is further ordered, adjudged and decreed that all of the mineral interests of plaintiffs named above are subject to certain oil, gas and mineral leases from said plaintiffs to A. K. Kilpatrick, (now assigned to J. M. Menefee) and to J. M. Menefee direct, and particularly the following mineral *447 leases and assignment of record in the Parish of Ouachita, Louisiana:

LEASES IN NAME OF A. K. KILPATRICK
(a) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 652;
(b) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 655;
(c) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 661;
(d) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 664;
(e) Assignment from A. K. Kilpatrick to J. M. Menefee of above leases, dated August 29, 1960, recorded in Conveyance Book 710, page 476;

LEASES MADE IN NAME OF J. M. MENEFEE
(f) Lease dated April 30, 1960, recorded in Conveyance Book 706, page 184;
(g) Lease dated July 20, 1960, recorded in Conveyance Book 706, page 722;
(h) Lease dated July 23, 1960, recorded in Conveyance Book 707, pages 31 and 234;
(i) Lease dated August 17, 1960, recorded in Conveyance Book 709, page 482;
(j) Lease dated February 21, 1961, recorded in Conveyance Book 728, page 95;
(k) Lease dated March 13, 1961, recorded in Conveyance Book 736, page 555;
(l) Lease dated June 20, 1961, recorded in Conveyance Book 737, page 736.
It is further ordered, adjudged and decreed that that certain mineral lease from the individual defendants herein, namely, Samuel W. Pipes, et als., to Arkansas Louisiana Gas Company, dated June 17, 1957, of record in Conveyance Book 622, page 253, of the records of Ouachita Parish, Louisiana, and that certain succession judgment in the Succession of Samuel W. Pipes, No. 38465 on the Probate Docket, Fourth District Court, dated December 1, 1948, of record in Conveyance Book 430, page 515, only insofar as said judgment covers and affects the land described herein, and that certain purported deed from Clem Roberson to S. W. Pipes, dated April 30, 1914, of record in Conveyance Book 72, page 541, be and they are hereby declared to be clouds on plaintiffs' title, and are hereby cancelled and erased from the public records insofar as they affect the land covered by this judgment.
It is further ordered, adjudged and decreed that defendant Arkansas Louisiana Gas Company be and it is hereby ordered to render an accounting to all plaintiffs herein of all the gas, distillate or other minerals taken and removed from plaintiffs' said property through the N. D. Morgan No. 1 Well, now situated on a drilling and production unit established by order of the Commissioner of Conservation, and in which the land described herein is incorporated as part of said production unit.
It is further ordered, adjudged and decreed that defendant Arkansas Louisiana Gas Company pay unto plaintiffs, as their respective interests may appear, their proportionate share of all amounts received by said Arkansas Louisiana Gas Company as the operator of said unit well from the sale of oil, gas, distillate or other minerals produced from said unit from date of first production until paid, together with legal interest thereon from the date of sale of said oil, gas, distillate or other minerals, on all amounts over and above plaintiffs' proportionate share of all drill and production costs due by them as set forth below, subject to payment by the plaintiffs named in this judgment of their pro rata share of the cost of drilling and producing gas or other minerals from the N. D. Morgan No. 1 Well to the date of settlement.
It is further ordered that defendants named herein pay all costs of these proceedings, including costs of this appeal.
NOTES
[1] An effort to redeem or cancel this adjudication was made by W. F. Pipes. On June 23, 1959, the Register of the State Land Office refunded the remittance made for that purpose, stating: "We are returning your affidavit to cancel tax sales for 1882 and 1883 in the name of Alfred Johnson as we find no record of such adjudication."