224 So.2d 1 (1969)
Blanche POUNDS et al.
v.
Effie Jane Gordon YANCY et al.
No. 7693.
Court of Appeal of Louisiana, First Circuit.
May 26, 1969.
Rehearing Denied July 2, 1969.
*2 Charles B. W. Palmer, of Palmer & Palmer, Amite, for appellants.
Burrell J. Carter, Greensburg, L. B. Ponder, Jr., of Ponder & Ponder, Amite, for appellees.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
Plaintiffs appeal the judgment of the trial court rejecting their action in simulation in which, as heirs of one Isaac Gordon, they seek to annul a sale by said decedent to his daughter, Effie Jane Gordon Yancy, defendant, on the ground no consideration was paid for the alleged transfer. We find the trial court correctly dismissed this action on the merits and affirm the judgment rendered below.
The property in question was acquired on an undisclosed date during the marriage of Isaac Gordon to his second wife, Malissa Tucker, said union occurring sometime prior to 1926. Subject tract became the "home place" of the Gordon family and has remained so for many of the Gordon heirs *3 to the present time. The controversy at hand stems from a sale of the land on May 25, 1927, by Isaac Gordon to defendant herein, one of decedent's daughters, whose husband, Robert Yancy, is also named defendant in these proceedings. The sale, duly executed by notarial act, and properly recorded, recites a consideration of $337.00, of which sum $100.00 was allegedly paid in cash, the balance of the purchase price being represented by a promissory note executed by the named vendee payable to the order of "myself" and properly endorsed. It is undisputed that the vendor and his wife remained on the property until their deaths, both of which occurred within one or two years following the sale.
Plaintiffs, grandchildren of decedent, represent their predeceased mother, Martha Gordon Pounds, the legitimate daughter of decedent, Isaac Gordon.
The record discloses that from the date of purchase from her father, defendant Effie Gordon Yancy has continuously paid the taxes on subject property. It further appears that from the death of her last surviving parent, defendant has exercised ownership rights regarding the lands, as will hereafter appear. Sometime during the interval 1937-1942, plaintiff and her family moved onto the property, a tract of approximately 140 acres. Plaintiff and her family worked the land along with other members of the family who resided on the place. In addition, plaintiff's family constructed a residence in which they lived.
In or about 1949, conflicting claims of ownership arose between plaintiff Blanche Pounds and the other plaintiffs herein. The controversy culminated in defendant attempting to obtain a lease from plaintiff Annie Pounds Womack covering a certain portion of the tract. Plaintiff declined to execute a lease and the matter remained dormant until 1955, at which time defendant unsuccessfully attempted to obtain a lease from plaintiffs. At this juncture, defendant threatened to legally evict plaintiffs but did not pursue the matter in the courts. Later, however, on February 20, 1956, defendant filed eviction proceedings against plaintiffs. Due to various postponements, the eviction proceeding was not heard until February 17, 1958, at which time exceptions of no right and no cause of action filed by defendants in the ejection suit were sustained and the demands of plaintiff therein dismissed. An appeal was taken by plaintiff in the eviction proceeding; said appeal, however, was not perfected.
On February 14, 1958, Suit Number 2064 on the docket of the trial court was filed by present plaintiffs. The pleadings therein are essentially and basically the same as those in the case presently before us. On April 23, 1959, the pleadings in Suit Number 2064 were amended to include certain additional persons as parties plaintiff. Certain exceptions filed by defendant in Suit Number 2064 were overruled by judgment rendered February 8, 1960. No further action was taken therein until July 15, 1965, on which date plaintiffs moved for a continuance, which request was denied. On that same date, defendant moved for and was granted judgment declaring the action abandoned for failure to prosecute same for five years and dismissing the suit pursuant to La.C.C.P. Article 561.
Meanwhile, however, plaintiffs instituted the present action on July 9, 1965. In addition to making pleas almost identical to those urged in Suit Number 2064, the present action seeks injunctive relief against alleged timber cuttings reputedly made by defendant on the property in which plaintiffs claim an interest. Defendant responded to the instant action by filing (1) a plea of res judicata based on the dismissal of Suit Number 2064, and (2) pleas of ten and thirty years prescription. All said defenses were referred to the merits by the trial court. As previously noted, the trial court rendered judgment for defendant on the merits and plaintiffs have appealed.
*4 Appellants contend the trial court erred in finding the act of sale in question was not a simulation because it was shown some consideration was paid. Alternatively, appellants urge the trial court erred in finding plaintiffs failed to prove the value of subject property at the time of sale was more than the recited consideration.
Defendants contend the trial court erred in (1) failing to sustain appellees' pleas of abandonment and res judicata predicated on dismissal of the former action; (2) declining to sustain defendants' exceptions of 10 and 30 years prescription. Plaintiffs counter by charging the trial court improperly dismissed the prior action because it was not in fact abandoned. It is urged in this respect that plaintiffs on numerous occasions contacted their attorney of record in the former action and inquired as to the status of the suit. In addition, plaintiffs contend they repeatedly made known to their counsel their desire to prosecute the matter to judgment. Alternatively plaintiffs argue the judgment of dismissal may not form the basis of a plea of abandonment or res judicata because it never became final. In this regard plaintiffs show they filed a rule in Suit Number 2064 to set aside the judgment of dismissal, which rule has never been acted upon by the trial court.
We find no merit in plaintiffs' contention Suit Number 2064 was improperly dismissed by the trial court because it was not within appellants' power to prosecute same. Admittedly, failure to prosecute for five years does not constitute a conclusive presumption of intent to abandon the action. Bell v. Staring, La.App., 170 So. 502. The fault, to warrant dismissal, must be attributable to plaintiff and where the cause of failure to prosecute is beyond plaintiff's control, the prescriptive period does not run. Barton v. Burbank, 138 La. 997, 71 So. 134; Bell v. Staring, supra.
However, where plaintiff has it within his power to act in furtherance of the prosecution of his claim to final judgment, but fails to do so through neglect or inaction, he will be considered as having abandoned his suit. Augusta Sugar Co., Ltd. v. Haley et al., 163 La. 814, 112 So. 731.
In contending circumstances beyond their control prevented their prosecution of the former action, plaintiffs allege merely that they constantly and continuously besought their then counsel of record by letter, telephone communication and personal contact to pursue their cause in the courts and frequently inquired as to the status of the matter, without avail. In effect, appellants urge they did all within their power to prompt their counsel to act and therefore should not be charged with his dereliction in failing to properly discharge his professional obligation.
We do not consider such circumstances beyond the control of the parties litigant. It is always within the power of a litigant to discharge an attorney who neglects or refuses to act and replace him with another counselor. "Circumstances beyond the control of the litigant", as pertains to the issue at hand, contemplates events making it impossible for the litigant to act in his own behalf such as service in the armed forces making it impossible for the litigant to be present. Zatarain v. Portera, La.App., 63 So.2d 477. A similar circumstance, in our view, would be confinement to a mental institution.
We likewise find no merit in defendants' contention plaintiff's suit should be dismissed on the ground of abandonment or defendants' plea of res judicata. Conceding, arguendo, the finality of the judgment of dismissal of the prior suit, said decree nevertheless cannot form the basis of a plea of abandonment or res judicata.
Defendants' position in this regard is predicated on LeBlanc v. Thibodaux, La. App., 162 So.2d 753, in which this court held an action should be dismissed "with prejudice" where no action was taken in a suit for five years and the matter was *5 declared abandoned. In LeBlanc, supra, our original decree affirmed in part the ruling of the trial court but as to certain defendants the judgment of the lower court was reversed and the matter remanded on October 3, 1951. A rehearing was denied by this court on September 3, 1952, from which date, until January 29, 1962, no action was taken in the matter. The effect of our dismissal "with prejudice" was to end all further prosecution of that action, although no plea of res judicata was therein involved.
However, a review of the jurisprudence, prompted by defendants' plea of res judicata, impels our reversal of LeBlanc, supra, insofar as said authority holds a suit dismissed for lack of prosecution should be dismissed "with prejudice". It appears this issue has been settled by the Supreme Court in City of New Orleans v. Westwego Canal & Term. Co., 206 La. 450, 19 So.2d 201, in the following language:
"In any event, suits dismissed for want of prosecution under the provisions of Article 3519 of the Revised Civil Code do not decide any issues in controversy and cannot, therefore, form the basis of a plea of res adjudicata. Charbonnet v. State Realty Co., Ltd., 155 La. 1044, 99 So. 865; Franek v. Turner, 164 La. 532, 114 So. 148; and Losch v. Greco, 173 La. 223, 136 So. 572, 573. As was stated in the Losch case, `In other words, the abandonment which results as a legal consequence of a plaintiff's failure to take any action in his suit during a period of five years merely bars his right to continue with the prosecution of that suit. It does not prevent his bringing another suit for the same cause of action; but, if he brings another suit for the same cause of action, the question whether his right of action is barred by prescription must be determined as if no suit had been theretofore brought.'"
Nor does it appear that recodification of La.C.C. Article 3519 into present La.C.C.P. Article 561, has effected any change in the jurisprudence announced in City of New Orleans, supra. Subsequent to the effective date of La.C.C.P. Article 561, the rule laid down in City of New Orleans, supra, has been followed and reiterated in Andrieu v. Davis, La.App., 205 So.2d 181, and State, Department of Highways v. Rottman, La.App., 213 So.2d 77. Clearly, therefore, dismissal of the prior action did not prohibit institution of the present suit.
Our law is settled to the effect that forced heirs, such as plaintiffs herein, have available three means by which they may attack a transfer of property by their ancestors to a particular forced heir. For a scholarly discussion of the subject matter, see 26 Tulane Law Review 203. The procedures thus available to forced heirs are the action in simulation and the demands for collation and reduction.
A simulated transaction is one declared to be feigned or pretended. It has, in effect, no existence. It is a sham inasmuch as the true intent of the parties is that no transfer take place but rather that title remain in the purported vendor because no consideration whatsoever was in fact paid. Succession of Webre, 247 La. 461, 172 So.2d 285.
An action in simulation is imprescriptible. La.R.C.C. Article 2239; Succession of Webre, supra; Smelley v. Ricks, 174 La. 734, 141 So. 445.
When a vendor retains possession by precarious title, or reserves the usufruct and possession of property purportedly sold, the transaction is presumed a simulation. In such cases the parties to the sale bear the burden of proving the authenticity of the transfer. La.C.C. Article 2480; Menefee v. Pipes, La.App., 159 So. 2d 439.
Where any consideration passes from vendor to vendee, no matter how *6 small, the transaction cannot be held a simulation. Succession of Quaglino, 232 La. 870, 95 So.2d 481. We find, as did the trial court herein, the transaction assailed was not simulative.
The record discloses verbal testimony of defendant purchaser that the recited consideration of $337.00 was paid in its entirety. She relates that the stated sum of $100.00 averred to have been paid at the time of transfer was in fact paid in cash. In addition, she produced a cashier's check dated May 28, 1927, in the sum of $208.19 issued by the Bank of Greensburg, purchased by defendant and given to and cashed by one J. L. Butler to be credited to decedent's account with Butler, all of which data is noted on the check, a copy of which appears of record. Defendant vendee testified further that the remaining balance on the purchase price was paid to defendant's mother. As previously noted, defendant has paid all taxes assessed against the property since the date of purchase. From the foregoing, we unhesitatingly conclude defendants have established consideration was paid for the transfer and thus refuted the presumption of simulation.
Although plaintiffs do not specifically pray for collation herein, we find that under the allegations of the petition this matter falls squarely within the ambit of Succession of Webre, supra, pursuant to which a similar petition was held sufficient to admit proof of simulation, or that the sale was at a low price or that it was a donation in disguise. Having so held, the court considered and pointed out the scope of LSA-R.C.C. Articles 1248, 2239 and 2444 and noted that Article 1248, supra, contemplates an actual sale of property by parent to child at a very low price. Article 2239 was observed to encompass simulated or feigned agreements having no legal effect while Article 2444 was declared applicable to a donation in disguise by parent to child meaning a sale in which no price is paid or one in which the actual price paid is less than one-fourth the value of the property. The court further observed that Article 1248, supra, expressly provides relief by collation and that in the absence of an independent ground for nullity, the appropriate relief under Article 2444 is likewise collation, citing as authority for the latter proposition, Clark v. Hedden, 109 La. 147, 33 So. 116, and other cases.
After concluding in Succession of Webre, supra, that prescription did not run against an action in simulation, in addressing itself to the issue of collation, the Supreme Court observed:
"More difficult are the pleas of prescription to the demand for collation.
It is now settled that the five year prescription of LSA-C.C. Article 3542 does not apply to collation. This Court, however, has not as yet determined which, if any, of the several prescriptions does apply to collation. The identification of the prescription was reserved in Himel v. Connely, 195 La. 769, 197 So. 424, holding the five year prescription inapplicable. The prescriptive period has been ably treated in the law journals. See 3 Louisiana Law Review 284, 460; 27 Tulane Law Review 241; and 9 Loyola Law Review 912.
After a thorough analysis, the Court of Appeal applied the prescription of ten years under LSA-C.C. Article 3544. We agree that this prescription applies to collation.
Article 3544 provides:
'In general, all personal actions, except those before enumerated, are prescribed by ten years.'
Collation, or the return of property to a succession, is the means by which the law seeks to assure the equal distribution of the ancestor's property among the direct descendants. It arises from an obligation, or duty, imposed upon the heir by law. The heir may release himself from this duty by renouncing the succession. Despite a renunciation, *7 however, the law protects the legitime of the heirs.
Collation can be demanded only by the heirs designated by law. It is accomplished in two ways: in kind or by taking less. Collation is made in kind when the property is returned to the succession; it is made by taking less when the heir reduces his inheritance in proportion to the value of the property he has received. Generally, the collation of immovables may be made either in kind or by taking less. The collation of movables must be made by taking less.
Basic to collation, as we view it, is the duty of the heir. The right to enforce the duty is restricted to the designated co-heirs. Although the demand has unique features, we think that it must be classified as a personal action under LSA-C.C. Article 3544 for purposes of prescription. We hold that the ten year prescription of that article applies to a demand for collation.
To avoid the prescription, the plaintiffs rely mainly upon LaBarre v. Rateau, 210 La. 34, 26 So.2d 279 and Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582. These cases held that the ten year prescription of Article 3544 could not be invoked in the actions there considered. But the cases are inapposite. Unlike the present case, both involved real actions.
Having concluded that the ten year prescription applies, we reach the question of when the prescription begins to run. The plaintiffs assert that it runs only from the date they acquired knowledge of the conveyance. Alternatively, they assert that it runs only from the filing of the formal succession proceedings. We find no merit in either contention.
A succession is opened upon the death, and all rights vest as of that time. From that moment, an heir may file formal succession proceedings and demand collation.
Activating the prescription only from the filing of formal succession proceedings would severely limit its effect. Collation is barred in any event after the heirs unconditionally accept a succession and obtain judgment putting them in possession of the property.
We conclude that prescription runs from the death of the person to whose succession collation is to be made."
Notwithstanding two rather strong dissents sharply critical of the majority view expressed in Succession of Webre, supra, there can be little doubt of the intent of the majority of the Court to hold the action in collation subject to the ten year prescriptive period provided for in La.R.C. C. Article 3544.
We find no factual basis distinguishing the instant case from Succession of Webre, supra, and consequently hold that insofar as the present action seeks collation from defendants, it is prescribed in conformity with La.R.C.C. Article 3544.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.