STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-1102

OLLIE MAE PECOT

VERUS

CALCASIEU-CAMERON HOSPITAL SERVICE DISTRICT d/b/a
WEST CALCASIEU CAMERON HOSPITAL and
ABC INSURANCE COMPANY

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 98-6318
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********
**ARTHUR J. PLANCHARD,**
**JUDGE PRO TEMPORE**
**********

Court composed of Billie Colombaro Woodard, Elizabeth A. Pickett, and Arthur J.
Planchard, Judges.

**AFFIRMED.**

WOODARD, J. dissents and assigns written reasons.

**Frank A. Granger**
**Attorney at Law**
**1135 Lakeshore Dr., Suite 5A**
**Lake Charles, LA 70602**
**Counsel for Plaintiff/Appellant:**
    **Ollie Mae Pecot**

**Rick Bryant, District Attorney**
**Terry J. Manuel, Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602**
**Counsel for Defendant/Appellee:**
    **Calcasieu-Cameron Hospital Service District d/b/a/**
    **West Calcasieu Cameron Hospital**

PLANCHARD, Judge.

Plaintiff, Ollie Mae Pecot, appeals a judgment of the trial court dismissing her suit against Defendant, Calcasieu-Cameron Hospital Service District d/b/a West Calcasieu Cameron Hospital, for abandonment. We affirm the judgment of the trial court.

**LAW, FACTS AND DISCUSSION**

Inasmuch as this appeal turns on factual determinations by the trial judge, we must review the record using the manifest error-clearly wrong standard of appellate review. That standard was recently reviewed by our supreme court in *Cenac v. Public Access Water Rights Assn.*, 02-2660, pp. 9-10 (La. 6/27/03), 851 So.2d 1006, 1023:

> In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. *Ambrose v. New Orleans Police Department Ambulance Service*, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.

In the case sub judice, the trial court, in its "Written Reasons" set out the facts and the law in great detail. As our review of the law and the evidence find both to be accurate, we adopt the trial court's written reason for judgment as our own:

> This matter came on to be heard pursuant to regular fixing on *RULE TO SHOW CAUSE WHY SUIT SHOULD NOT BE DISMISSED ON GROUNDS ABANDONMENT*, filed June 20, 2002. A hearing was held on October 2, 2002, and the record was left open to give the parties additional time to present additional evidence and was eventually re-fixed to January 27, 2003. In addition to the evidence previously presented at the original hearing, the parties submitted the deposition of Dr. Buttross, together with additional memorandums and the matter was taken under advisement.
>
> It appears from the record of these proceedings that Ollie Mae Pecot (hereinafter, Plaintiff) claims damages for medical malpractice

1

based on an event occurring on either February 2, 1991 or February 5, 1991.

A medical review panel was convened and met in September 1991, and their final opinion was issued on September 21, 1998.

The *PETITION FOR DAMAGES* in these proceedings was filed on November 25, 1998, on behalf of the Plaintiff by Mr. Frank Granger. West Calcasieu Cameron Hospital (hereinafter WCCH) filed its ANSWER on January 6, 1999. There is no further activity until the instant RULE was filed more than three (3) years later.

The evidence submitted consisted of the following:

1.      The deposition of Plaintiff taken on September 10, 2002, wherein the Plaintiff stated that she had limited education, suffered from many ailments, took a variety of medications, had been hospitalized on several occasions, at least two (2) of which were for mental depression problems and had other personal problems. She believed that she could not change attorneys. She made numerous efforts to contact Mr. Bobby Pitre, who she understood was the attorney handling her case on referral from Mr. Frank Granger. Her efforts consisted of calling Pitre (about 40 times), going by his office (about 40 times), sometimes leaving notes when she went by (about 10 times), going by his father's house on many occasions, and calling him at his father's house several times as well. On one occasion, after she had gone to Mr. Pitre's office and received no answer to her knock on the door, Mr. Pitre called her when she returned home and stated that he was at the office when she came by and in response to her question about why she was ignored by him, he said "I'm living - that is my house now, I'm living out of it."

2.      The attachments to the Plaintiff's brief, which included:

        a.      Appointments of the Plaintiff with Dr. Buttross of May 28, 2002, July 25, 2002, and October 31, 2002; b. A Patient Account Inquiry from the Institute of Neuropsychiatry reflecting dates of service with the type and diagnosis for the dates of September 4, 1999 through September 15,1999, September 23,1999, October 25, 1999, August 23, 2000, April 18, 2001, October 11, 2001;

        c.      Lake Charles Memorial Hospital Abstract Inquiry reflecting admissions for Plaintiff of

June 1, 1999, November 2, 1999 (discharged the same day), October 19, 2001, June 15,2002 (discharged on June 17, 2002);

d.  Christus Health Clinical Visit Information Processor for Plaintiff reflecting treatment or admissions for the following dates:

1. August19,1999;
2. September 3, 1999;
3. September 4, 1999 to September 15, 1999 for mental health purposes;
4. November 10, 1999 to November 11, 1999;
5. January 13, 2000;
6. February 2, 2000;
7. February 4, 2000 to February 6, 2000;
8. March 8, 2000;
9. March 9, 2000;
10. March 12, 2000;
11. April 14, 2000 to April 22, 2000;
12. April 28, 2000 through May 2, 2000;
13. June 28, 2000;
14. October 12,2000;
15. October 22,2000 through October 24,2000;
16. December 12, 2000;
17. December 15, 2000;
18. December 16,2000;
19. January 11, 2001;
20. February 7, 2001 through February 12, 2001;
21. July 7, 2001 through July 12, 2001;
22. December 12, 2001;
23. December 13, 2001;
24. January 29, 2002;
25. May 8, 2002;
26. May 17, 2002 through May 21, 2002 for mental health reasons;
27. August 27, 2002 through August 30, 2002;

e.  Correspondence from Frank Granger to Bobby Pitre dated January 20, 1999, confirming a lunch conference and a question as to whether or not Mr. Pitre would be interested in handling the Plaintiffs case;

f.  Correspondence from Mr. Granger to Mr. Pitre dated October 5, 1999, reflecting Mr. Granger's concern that abandonment not take place and an understanding that Mr. Pitre had met several times with the Plaintiff since this file had been returned to Mr. Pitre;

g. Correspondence from Mr. Granger to Mr. Pitre dated December 23, 1999, confirming a brief discussion between Pitre and Granger concerning contact by Terry Manuel on behalf of WCCH concerning settlement of the case and requesting information concerning status of this matter and that no Motion and Order to Enroll As Counsel had been received;

h. Correspondence from Mr. Pitre to Plaintiff dated January 4,2001, requesting a meeting with her;

I. Correspondence from Mr. Pitre to Mr. Manuel dated January 25, 2001, seeking settlement;

j. Correspondence from Mr. Manuel to Mr. Pitre dated March 12, 2001, requesting some kind of settlement proposal;

3. The deposition of Dr. David Buttross, taken November 6, 2002, confirms his treatment and diagnosis of the Plaintiff and although he opines that she would have difficulty taking care of her business because of her varied mental status and her medications, he never felt that she was incapable of taking her own medications, he never reached a point where he felt she should have been interdicted or confined in a hospital or mental institution even though he might have considered re- " hospitalization if she had not gotten better after her initial hospitalization of 1999.

Louisiana Code of Civil Procedure, Article 561 (a)(1), provides that an action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years.

The Louisiana Supreme Court has stated that

The source of article 561 is Louisiana Civil Code article 3519, which is located in the section of the Civil Code dealing with the interruption of prescription..(and), the rule on abandonment of actions is a species of liberative prescription, separate and distinct from the prescription of the substantive claim itself.

As noted in the original comments appended to article 561, two early exceptions to the five-year rule of abandonment contained in article 3519 were recognized: (1) when the failure to prosecute was caused by circumstances beyond plaintiff's control, and (2) when the defendant waived his right to plead abandonment by taking any action in the case

4

inconsistent with an intent to treat the case as abandoned. See La.Code Civ.P. art. 561, Comment (C)(1960) and authorities cited therein. Properly viewed, these two exceptions evidence two well-established rules of prescription: (1) prescriptions does not run against one who is unable to interrupt it, and (2) prescription may be interrupted by acknowledgment. **307 So.2d 308, Melancon v. Continental Cas. Co., (La. 1975)**[sic].

The law favors maintaining an action whenever possible so that the aggrieved party has his day in court. The policy underlying this requirement is the prevention of protracted litigation that is filed for purposes of harassment or without a serious intent to hasten the claim to judgment. Article 561 is not to be used to dismiss cases where the plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon the action. It is not designed to dismiss actions on mere technicalities but to dismiss those actions which in fact have been abandoned. Dismissal of a suit is the harshest of remedies. The law favors and justice requires that an action be maintained wherever possible so that an aggrieved party has his day in court to which he is entitled. Abandonment proceedings in accordance with Article 561 should be given a liberal interpretation and any action or step taken by plaintiff to move his case toward judgment should be considered. **707 So.2d 1350, 97-1079 (La.App. 5 Cir. 2/25/98), State v. Holleman, (La.App. 5 Cir. 1998); 665 So.2d 30, 95 0607 (La.App. 1 Cir. 11/9/95), Jones v. Phelps, (La.App. 1 Cir. 1995)**[sic]; and cases cited therein.

The first exception to the rule of abandonment contemplates events which make it impossible for a litigant to act on his own behalf, such as service in the armed forces or confinement to a mental institution. **Haisty v. State, Department of Transportation and Development, 25,670, p. 4 (La.App. 2d Cir. 3/30/94), 634 So.2d 919, 922; Courtney v. Henderson, 602 So.2d 95, 97 (La.App. 4th Cir. 1992)**.

Circumstances beyond the control of a party, however, have not included inaction by plaintiff's attorney. The fact that an attorney refused or neglected to act for five years has not been found to constitute such circumstances. In Brown v. Edwards, 435 So.2d 1073, 1075-76 (La.App. 1st Cir.1983) (quoting Pounds v. Yancy), the court concluded that circumstances beyond the control of a party contemplate events which make it impossible for the litigant to act in his own behalf, such as service in the armed forces or confinement to a mental institution. Likewise, if the plaintiff can not rectify the situation, he should not be charged with the consequences. **602 So.2d 95, Courtney v. Henderson, (La.App. 4 Cir. 1992)**.

In **Aucoin v. Baton Rouge Jaycees, Inc., 491 So.2d 422, (La.App. 1 Cir. 1986)**, the court was faced with statements in plaintiff's appellate brief regarding his mental and emotional state, characterized by

disabling depression, but held that the statements do not constitute evidence, stating ... "we are not persuaded by plaintiff-appellant's argument that failure to prosecute the suit for over five years is excused by the jurisprudential exception to dismissal for circumstances beyond the plaintiff's control."

There is no evidence in the record that any formal discovery was taken and it is obvious from a review of the record that more than three (3) years lapsed from the time that the ANSWER was filed until the time that the RULE TO SHOW CAUSE WHY SUIT SHOULD NOT BE DISMISSED ON GROUNDS OF ABANDONMENT was filed.

There is ample evidence that the Plaintiff never exhibited an intent to abandon her claim. It is unfortunate that Plaintiff was referred to Bobby Pitre, an attorney who did absolutely nothing to move this case to conclusion, he didn't even enroll as her counsel, didn't respond to a request for a settlement proposal, and ignored his client at his door. Inaction by the attorney however is a not a reason to maintain a suit. The main issue is whether a plaintiff who 1) suffers from depression which required her hospitalization on at least 2 occasions, 2) has limited education, 3) is advanced in age, 4) takes numerous types of medications, and 5) has other physical problems, was prevented from pursuing her claim. In other words, was she unable to prevent the abandonment caused by the inaction of her attorney, or stated another way, was she unable to act for reasons basically out of her control or stated another way, was it impossible for her to act.

I have carefully reviewed the evidence presented in this case and am not satisfied that the totality of her conditions rise to the requisite level. It was not impossible for her to act. She did in fact go to Pitre's office, left notes, called his office, called his home (father's home), and went by there. It also appears that she spoke to Pitre initially and possibly on a couple of occasions thereafter, but certainly she spoke with Pitre on one occasion when he admittedly ignored Plaintiff as she stood at the doorway of his office/home. She was not prevented from contacting another attorney who could have acted more diligently on her behalf. In other words, Plaintiff could have rectified the situation. She was never ruled an interdict nor did her doctor believe that her condition ever got to that point.

Judgment will be rendered GRANTING the Motion to Dismiss under CCP Art. 561.
Accordingly, for the reasons stated above, the judgment of the trial court is

affirmed. Inasmuch as Plaintiff/Appellant, Ollie Mae Pecot, is appearing before this

court as a pauper, we pretermit the assessment of costs.

**AFFIRMED.**

6

NUMBER 03-1102

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

OLLIE MAE PECOT

     Plaintiff - Appellant

Versus

CALCASIEU-CAMERON HOSPITAL SERVICE DISTRICT d/b/a
WEST CALCASIEU CAMERON HOSPITAL and ABC INSURANCE COMPANY

     Defendants - Appellees

On appeal from the Fourteenth Judicial District Court [No. 98-6318], for the Parish of Calcasieu, State of Louisiana; the Honorable D. Kent Savoie, District Judge, presiding.

Woodard, J., dissenting.

I respectfully dissent from the majority's opinion.

As the majority recognizes, jurisprudence has carved out two exceptions to the abandonment statute. The exception implicated in the instant case is that when circumstances beyond a litigant's control are the cause of her failure to prosecute, she should not suffer the harsh remedy of dismissal. However, because this is a jurisprudential exception, courts have used it sparingly. In doing so, the courts require a stringent showing that circumstances were sufficiently serious and beyond the litigant's control that she was unable to act on her own behalf in prosecuting the suit.

Other circuits have used two specific examples to suggest the type of circumstances which would satisfy such a stringent showing; namely, when a litigant is in the armed forces or confined to a mental institution. Notwithstanding, while courts have used these two instances to demonstrate the level of extremity that is necessary before granting the litigant relief, they are examples, only. I do not believe that these two situations comprise an exclusive list of instances which satisfy the

definition of "circumstances beyond a litigant's control." Rather, I believe we must make the determination on a case-by-case basis.

It is obvious in the instant case that Ms. Pecot never intended to abandon her suit. In fact, she was dogged in her attempts to ensure its progress and, as far as she knew, she did everything within her control to further it. I find that her circumstances and attempts justify an exception to abandonment, particularly in light of her exhaustive efforts to contact her attorney, her belief that she could not change attorneys, as well as her prolonged mental instabilities for which her psychiatrist stated rendered her incapable of (rationally) handling her affairs.